MICHAEL CORBITT *et al.*, Plaintiffs-Appellees, *v.* THE PRESIDENT OF THE VILLAGE OF WILLOW SPRINGS *et al.*, Defendants-Appellants.

First District (3rd Division)   No. 81-1674

Opinion filed December 30, 1981.

Goldstine and Broida, Ltd., of Summitt (Ronald J. Broida and Richard J. Skrodzki, of counsel), for appellants.

Jenna Lynn Schoeneman, of Barnett, Ettinger, Glass, Berkson & Braverman, Ltd., of Chicago (Dennis A. Berkson, of counsel), for appellees.

PRESIDING JUSTICE RIZZI delivered the opinion of the court:

Plaintiff Michael Corbitt is the chief of police for the Village of Willow Springs, and the other plaintiffs are members of the Willow Springs police department. Defendant Frank Militello is the president of Willow Springs, and defendant James Ross is the man appointed by Militello to replace Corbitt as chief of police. The remaining defendants comprise the Board of Trustees of the Village of Willow Springs. Plaintiffs filed suit to permanently enjoin defendants from removing them

from their positions with the police department without a due process hearing, from interfering with plaintiffs as they performed their duties, from failing to pay plaintiffs the salaries or benefits attendant to their employment, and from taking control or possession of property belonging to Corbitt in his position as chief of police. Defendants counterclaimed for injunctive relief, seeking to have plaintiffs removed from their positions with the police department and to prevent them from harassing defendants or interfering with them as they carried out their official duties. The trial court entered a judgment for permanent injunction in favor of plaintiffs, granting them the relief requested in their complaint. Defendants' counterclaim for injunctive relief was denied.

Plaintiff Corbitt became chief of police of Willow Springs in 1973. He was appointed by the village president with the advice and consent of the Village Board of Trustees. Thereafter, he was reappointed for successive one year terms. In May of 1978, Village President Richard Dombrowski gave Corbitt a commission card which showed Corbitt's term running from May 1, 1978, to "cause." Plaintiffs Bonello and Fontani, both full-time employees of the police department, also received cards showing terms running until cause. The minutes from Village Board meetings show that these plaintiffs were still appointed on an annual basis by the village president after they had received these commission cards. The remaining plaintiffs are part-time police employees, appointed on an annual basis. The latest commission cards issued to these plaintiffs show their terms of employment as expiring on either April 30, 1981, or May 1, 1981.

On May 22, 1980, the Willow Springs Board of Trustees adopted Ordinance No. 80-6. The ordinance established a Personnel Review Board having jurisdiction over all village employees, including members of the police department. The Board was given the responsibility of holding hearings when charges which could result in a reprimand, suspension or removal were brought against any member of the fire or police department or any other village agency. Following a hearing, the Personnel Review Board would give a written report of its findings to the Village Board, which had the final authority to determine any disciplinary action. The ordinance further provided that the village employees were entitled to receive notice of the hearing and a copy of the complaint. Further, the ordinance accorded the employees the right to be represented by counsel, to present witnesses and to cross-examine witnesses called by the opposing party. Dombrowski appointed members of the Personnel Review Board in March of 1981, shortly before his term as president expired.

On April 28, 1981, the newly elected president and Board of Trustees of Willow Springs met. They enacted Ordinance No. 81-WS-3, which effectively repealed Ordinance No. 80-6. The new ordinance provides

that the president shall have the power to remove or discharge the chief of police by filing with the Board of Trustees the reasons for such action, and the removal or discharge shall become effective when approved by that board. All other employees of the police department shall be hired and discharged by the president with the approval of the Board of Trustees. After this new ordinance was adopted, President Militello appointed defendant Ross as chief of police to replace Corbitt, and he also hired other employees for the police department to replace the remaining plaintiffs. Plaintiffs refused to relinquish their positions, and this suit followed.

According to plaintiffs, the trial court was correct in ruling in their favor because they had a constitutionally protected property interest in their continued employment until they were removed for cause. Plaintiffs contend that on April 28, 1981, the village president and trustees attempted to remove, discharge and replace plaintiffs without regard to plaintiffs' constitutional rights to due process. According to plaintiffs, defendants attempted to accomplish this scheme by replacing Ordinance No. 80-6 with Ordinance No. 81-WS-3, which did not provide procedural due process rights for employees of the police department. Also, they appointed a new police chief and other police employees to replace plaintiffs, although no charges had been filed against plaintiffs and they had not been accorded the due process rights of notice and a hearing to which they were entitled.

■■ In deciding whether plaintiffs' due process rights have been violated, we must first determine whether plaintiffs have a property interest. (See *Polyvend, Inc. v. Puckorius* (1979), 77 Ill. 2d 287, 294, 395 N.E.2d 1376, 1378-79.) Property interests are not created by the constitution. Rather, they are created by an independent source such as State laws, local ordinances or mutually explicit understandings. *(Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709; *Leis v. Flynt* (1979), 439 U.S. 438, 442, 58 L. Ed. 2d 717, 722, 99 S. Ct. 698, 700.) To have a property interest in a benefit, a person clearly must have more than a unilateral expectation of it. He must, instead, have a legitimate enforceable claim of entitlement to it. *(Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709; see also *Perry v. Sindermann* (1972), 408 U.S. 593, 601, 33 L. Ed. 2d 570, 580, 92 S. Ct. 2694, 2699.) Moreover, the plaintiff has the burden of proving his legitimate enforceable claim of entitlement. *Newby v. Board of Education* (1977), 53 Ill. App. 3d 835, 836-37, 368 N.E.2d 1306, 1307.

In the present case, plaintiffs stipulated to the fact that the Village of Willow Springs has never had a civil service regimen or a board of fire and police commissioners. Instead, plaintiffs claim that their entitlement to continued employment arose from case law, local ordinances and

contractual rights. Plaintiffs contend that they were not hired for a fixed term of employment but for a term to continue indefinitely absent a showing of sufficient cause for discharge. In support of this contention, plaintiffs rely upon the commission cards issued to them, Ordinance No. 80-6, and the Police and Fire Committee, which allegedly accorded due process rights to policemen prior to the enactment of Ordinance No. 80-6. We conclude, however, that these circumstances are inadequate to establish a legitimate enforceable claim of entitlement to continued employment in plaintiffs.

The commission cards issued to plaintiffs are insufficient to establish a protectable property interest. Turning first to the circumstances surrounding Corbitt's term of office, the testimony shows that from 1973 until 1978, Corbitt was appointed to successive one-year terms as chief of police. In May of 1978, he received the commission card which showed his term of office as running until "cause" from President Dombrowski. The card was signed by Dombrowski and the village clerk. Despite the existence of this card, Corbitt was reappointed as chief of police by Dombrowski at Village Board meetings in each succeeding year. These annual reappointments are inconsistent with Corbitt's claim of entitlement to continued employment absent discharge for cause.

■■ Moreover, under section 3—7—2 of the Illinois Municipal Code (Ill. Rev. Stat. 1979, ch. 24, par. 3—7—2) the village president is authorized to appoint all officers of the Village with the advice and consent of the Board of Trustees. The term of office of such appointees may not exceed that of the president, except as otherwise may be provided in the Municipal Code. In addition, section 1—18—3 of the Village Code of Willow Springs provides that the term of office of appointed officers is one year. Nothing in the record shows that Dombrowski had the authority to extend Corbitt's term indefinitely. Under these circumstances, there are no State laws, local ordinances or mutually explicit understandings which support Corbitt's claim of a protected property interest. (See *Leis v. Flynt* (1979), 439 U.S. 438, 442, 58 L. Ed. 2d 717, 722, 99 S. Ct. 698, 700.) Corbitt was not rehired at the end of the term of the president who appointed him. While Corbitt may have had "an abstract need or desire" to be reappointed, he did not have a legitimate enforceable claim of entitlement thereto. *Board of Regents v. Roth* (1972), 408 U.S. 564, 577, 33 L. Ed. 2d 548, 561, 92 S. Ct. 2701, 2709.

■■ For the same reasons, we conclude that the commission cards issued to the remaining plaintiffs failed to establish a protectable property interest. Section 1—18—3 of the Village Code of Willow Springs gives village employees the same term of employment as appointed officers, that is, a one year term. Thus, the commission cards given to Fontani and Bonello showing their terms running until cause violated this section of

the Code. Additionally, like Corbitt, these plaintiffs were reappointed to the police department by President Dombrowski at Village Board meetings even after the "cause" commission cards had been issued. As for the rest of the plaintiffs, their latest commission cards show that their terms expired either April 30, 1981, or May 1, 1981. Therefore, the commission cards did not create a protectable property interest.

■■ Plaintiffs' reliance on Ordinance No. 80-6 and the Police and Fire Committee as factors supporting their claim of a property interest in their employment is untenable. Plaintiffs state in their brief that the Police and Fire Committee as well as the police department rules and regulations and the employee policy and procedural manual established a code of conduct and provided for charges to be brought and a hearing to be held prior to dismissal for failure to adhere to the code. According to plaintiffs, Ordinance No. 80-6 codified these prior attempts of the Village to set due process guidelines. Plaintiffs claim that their constitutional rights to due process as protected by the fourteenth amendment have therefore been violated.

Plaintiffs' argument overlooks the two-step procedure used to analyze the protection afforded by the fourteenth amendment. First, it must be determined whether the asserted interest is encompassed within the fourteenth amendment's protection of life, liberty or property. If protected interests are implicated, then a determination must be made as to what procedures constitute due process of law. (See *Ingraham v. Wright* (1977), 430 U.S. 651, 672, 51 L. Ed. 2d 711, 731, 97 S. Ct. 1401, 1413.) The arguments proffered by plaintiffs in regard to Ordinance No. 80-6 and its predecessors, while relevant to the second stage of due process analysis, are not germane to a consideration of the prerequisite first stage. The ordinance does not create a legitimate expectation of continued employment absent discharge for cause; rather, it provides procedural due process guidelines to protect village employees *during* their term of employment. Since plaintiffs have no legitimate enforceable claim of entitlement to continued employment absent discharge for cause, plaintiffs' argument is without merit.

In view of our conclusion, we need not address the other issues raised on appeal. Accordingly, the judgment of the trial court is reversed.

Reversed.

McGILLICUDDY and WHITE, JJ., concur.