Delbra LEE, Plaintiff–Appellant,

v.

COUNTY OF COOK, et al., Defendants–Appellees.

No. 88–1693.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 19, 1988.

Decided Nov. 14, 1988.

Lonny Ben Ogus, Chicago, Ill., for plaintiff-appellant.

Diane Kristen, Asst. States' Atty., Chicago, Ill., for defendants-appellees.

Before POSNER, RIPPLE and KANNE, Circuit Judges.

RIPPLE, Circuit Judge.

The appellant, Delbra Lee, brought this action in the district court seeking redress for an allegedly wrongful discharge from her employment in the Cook County State's Attorney's office. After entertaining three attempts by the appellant to state a cause of action under 42 U.S.C. § 1983, the district court dismissed the action. We affirm the judgment of the district court.

## I

## FACTS

As the case comes to us, the appellant argues that the district court erred in refusing to accept her third amended complaint.[1] Consequently, we shall confine ourselves to the facts set forth in that document.

In her third amended complaint, Ms. Lee alleges that she is a black woman who was employed as an administrative assistant in the State's Attorney's Office for Cook County, Illinois. At first, she worked on a part-time basis and attended school during the day. During the summer, she worked on a full-time basis. According to the complaint, Kathy Osterman, the appellant's supervisor, asked her to alter her academic schedule to night classes "so that she could work full-time and promised her a permanent position with all the benefits of an employee of the State's Attorney's Office." Third Amend. Complaint at ¶ 12. Ms. Lee agreed.

The complaint further alleges that the appellant had to attend work-related functions at night and her progress at school was jeopardized. Ms. Lee therefore told Ms. Osterman about her problems and her need for job security. According to the complaint, Ms. Osterman "continually reassured" her that "her job was secure and

---

1. The appellant also asks this court to determine the preclusive effect of the state unemployment agency's finding of "no evidence" of misconduct by Ms. Lee. In light of our holding that Ms. Lee has failed to establish the existence of a cognizable property interest in her position, we need not reach the merits of this submission.

would continue as long as she kept up the good work." *Id.* at ¶ 17. Consequently, Ms. Lee believed, according to the complaint, "that as long as she did a good job and did not do any acts to cause her termination, she would continue as an employee." *Id.* at ¶ 19. The complaint further alleges that defendant Al Gryzb, a manager in the State's Attorney's office, promulgated an employment policy under which "an employee like Plaintiff could only be terminated for sufficient cause, after progressive discipline because of poor performance or immediately because of the severity of the performance or situation." *Id.* at ¶ 24. On November 3, 1983, after an incident at work, Mr. Gryzb met with Ms. Lee and discharged her on the ground that "she had jeopardized the safety of other employees." *Id.* at ¶ 34.

## II

### ANALYSIS

The essence of Ms. Lee's complaint is that she was deprived of a cognizable property interest in her continued employment without due process of law. Read charitably, her complaint appears to allege that her employment constituted a cognizable property interest for three reasons: a) the policy promulgated by Mr. Gryzb created such a property interest, *see Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); b) the policy of Mr. Gryzb amounted to a "mutually explicit understanding" that created a cognizable property interest, *see Perry v. Sindermann*, 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); and c) the assurances of her supervisor, Ms. Osterman, also constituted such a "mutually explicit understanding." None of these theories can support the appellant's cause of action. Accordingly, the district court correctly dismissed the action.

### A. *Property Interest Created by Gryzb Policy*

■ The alleged policy of Mr. Gryzb cannot be said to create a "legitimate claim of entitlement" to continued employment that will support an action based upon 42 U.S.C.

§ 1983. Property rights are "created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law— rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Roth*, 408 U.S. at 577, 92 S.Ct. at 2709. Even if we assume *arguendo* that Mr. Gryzb had the authority to promulgate employee policies, *see Shlay v. Montgomery*, 802 F.2d 918, 922 (7th Cir. 1986), a statement that discharge will depend on the frequency and gravity of an employee's infractions hardly amounts to the creation of a legal entitlement to continued employment. It is simply the declaration of a middle-level manager that his response to employee infractions will be tailored to his estimation of the gravity of the infraction.

To assert a property interest, Ms. Lee must allege enough facts to show that she " 'has a legitimate claim of entitlement not to lose a valuable governmental benefit except for cause.' " *Davis v. City of Chicago*, 841 F.2d 186, 188 (7th Cir.1988) (citing *Begg v. Moffitt*, 555 F.Supp. 1344, 1348 (N.D.Ill.1983)). The dismissal of a state employee does not rise to a deprivation of property unless "the state earlier conferred upon him a right of continued employment by telling him, in a manner that made it reasonable for the employee to expect the state to stand behind its word, that it would continue to employ him." *Patkus v. Sangamon–Cass Consortium*, 769 F.2d 1251, 1263 (7th Cir.1985); *Smith v. Board of Educ.*, 708 F.2d 258, 261 (7th Cir.1983). Here, the alleged policy permitted Mr. Gryzb to exercise discretion in evaluating the seriousness of infractions giving rise to discharges. Mr. Gryzb simply exercised that discretion in this case. Thus, even under the explicit terms of the alleged Gryzb-promulgated policy of graduated discipline, the appellant can claim no cognizable property interest.

Nevertheless, the appellant refers us to the decision of the Supreme Court of Illinois in *Duldulao v. Saint Mary of Nazareth Hospital Center*, 115 Ill.2d 482, 106 Ill.Dec. 8, 505 N.E.2d 314 (1987), and sub-

mits that this articulation of state contract law bolsters her claim of a protectible property interest. In *Duldulao,* the state's highest court held that

> an employee handbook or other policy statement creates enforceable contractual rights if the traditional requirements for contract formation are met. First, the language of the policy statement must contain a promise clear enough that an employee would reasonably believe that an offer has been made. Second, the statement must be disseminated to the employee in such a manner that the employee is aware of its contents and reasonably believes it to be an offer. Third, the employee must accept the offer by commencing or continuing to work after learning of the policy statement.

106 Ill.Dec. at 12, 505 N.E.2d at 318. If these conditions are met, the court concluded, an enforceable contract is formed. *Id.* *Duldulao* stressed that the policy statement relied upon in that case contained clear, explicit promises. Here, by contrast, the complaint does not allege, nor the policy manifest, any communication of an offer, bargaining, or acceptance. *See id.* Consequently, we conclude that the principles enunciated in *Duldulao* do not compel the finding of a contract when applied to the facts of this case. *See Levitt v. Gorris,* 167 Ill.App.3d 88, 117 Ill.Dec. 818, 820, 520 N.E.2d 1169, 1171 (1987) (applying *Duldulao* and finding no contract stemming from agency's rule that "[i]f the appointee's services have not been satisfactory, he will be discharged").

### B. *"Mutually Explicit Understanding" Implied From Gryzb Policy*

Ms. Lee also asserts that the alleged policy promulgated by Mr. Gryzb was the basis of a mutually explicit understanding protected by the due process clause. Again, assuming *arguendo* that Mr. Gryzb was vested properly with policy-making authority, we do not believe that a mutually explicit understanding has been alleged adequately here.

■ In *Perry,* the Supreme Court noted that the absence of "an explicit contractual provision may not always foreclose the possibility that a teacher has a 'property' inter-est in re-employment.... Explicit contractual provisions may be supplemented by other agreements implied from 'the promisor's words and conduct in light of the surrounding circumstances.' " 408 U.S. at 601–02, 92 S.Ct. at 2700 (quoting 3A Corbin on Contracts § 562 (1960)). One recognized means of establishing the existence of such a mutually explicit understanding is to point to an employer's custom or policy. As this court noted in *Davis v. City of Chicago,* 841 F.2d 186, 188 (7th Cir.1988):

> An established custom or policy may be used as evidence that a mutually explicit understanding exists. For example, in *Perry v. Sindermann,* the Supreme Court held that an untenured professor at a state junior college may have a protected property interest in continued employment if the college utilizes a *de facto* tenure system. 408 U.S. at 602, 92 S.Ct. at 2700. However, a merely subjective and unilateral expectancy is *not* protected by due process. *Board of Regents v. Roth,* 408 U.S. at 577, 92 S.Ct. at 2709. It must be established that the custom was indeed practiced. See *Auriemma v. Chicago,* 601 F.Supp. 1080, 1083 (N.D.Ill.1984).

841 F.2d at 188–89; *see also Common v. Williams,* 859 F.2d 467, 470–71 (7th Cir. 1988).

As expressed in the third amended complaint, Mr. Gryzb's disciplinary policy cannot be characterized as an implied terminable-only-for-cause employment contract. Whatever expectations were created by the policy were patently unilateral. Ms. Lee fails to allege, either explicitly or by reasonable inference, that a *mutual* understanding arose. Thus, Mr. Gryzb's alleged policy does not amount to a "mutually explicit understanding" that can be characterized as a property interest; it amounts to nothing more than a statement that he will deal with employee disciplinary matters on a case-by-case basis.

### C. *"Mutually Explicit Understanding" Implied From Supervisor's Assurances*

■ Ms. Osterman's alleged statement to Ms. Lee is certainly not the sort of

statement that creates a cognizable property interest. A first-line manager's statement that she does not intend to terminate an employee whose performance remains satisfactory cannot be construed reasonably as a grant of tenure. Ms. Osterman's statement that Ms. Lee's "job was secure and would continue as long as she kept up the good work" does not constitute an implied contract or mutually explicit understanding such as that contemplated by *Perry* or *Roth.*

Moreover, we see no reason to disturb the district court's determination that a first-line manager like Ms. Osterman clearly lacked the authority to bind the state. Therefore, her statements can hardly be construed as a mutually explicit understanding of job tenure. *See Shlay v. Montgomery,* 802 F.2d 918 (7th Cir.1986). In *Shlay,* this court insisted that the statements upon which the claim of a mutually explicit understanding is based must be made by a supervisor vested with proper authority. *Id.* at 921. Any other promises are "unenforceable since it is well-established that a city is generally not legally responsible for acts taken by its officers in excess of their authority." *Id. See also Common,* at 471–72 (holding that informal assurances in contravention of state law do not create protectible property interests); *Hadley v. County of Du Page,* 715 F.2d 1238, 1242 (7th Cir.1983) (unofficial assurances of job security by individual county board members did not create a property interest as only formal board action was authoritative), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984); *McElearney v. University of Illinois,* 612 F.2d 285, 290 (7th Cir.1979) (informal assurances by supervisors did not estop university from denying tenure to assistant professor).

We therefore affirm the district court's holding that Ms. Osterman's lack of policymaking authority prevented Ms. Lee from properly alleging a mutually explicit understanding protectible by the due process clause.

III

CONCLUSION

The third amended complaint fails to allege a property interest protectible by the due process clause. Therefore, the judgment of the district court dismissing the action with prejudice is affirmed.

AFFIRMED.