**Eyvind J. ERICKSEN III, Plaintiff,**

v.

**VILLAGE OF WILLOW SPRINGS, an Illinois municipal corporation, and Leland Brannam, individually, and as Chief of Police for the Willow Springs Police Department, Defendants.**

No. 94 C 2940.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 31, 1995.

Fred T. Myers, Geneva, IL, for plaintiff.

Phillip A. Luetkehans, Mary E. Dickson, Schirott & Luetkehans, Itasca, IL, for defendants.

## MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

Before the Court is defendants' motion to dismiss or, in the alternative, to stay the action. For the reasons stated herein, defendants' motion to dismiss the complaint for failure to state a claim is denied. Defendants' motion to stay the action pending disposition of an action in state court is granted.

### Facts

Beginning in 1982, Eyvind J. Ericksen III ("Mr. Ericksen") was employed by the Willow Springs Police Department ("Department") as a patrol officer. On several occasions since April, 1986, Mr. Ericksen received verbal assurances from various police personnel, including Chief of Police Leland Brannam ("Mr. Brannam"), that he would not be terminated as long as he performed his duties in a satisfactory manner.[1] On May 14, 1992, the Board of Trustees for Willow Springs ("Board") voted to terminate Mr. Ericksen's employment with the Department without informing him of the reasons for termination or giving him a formal hearing.

On May 25, 1993, Mr. Ericksen brought an action in the Circuit Court of Cook County against the Village of Willow Springs and Mr. Brannam (collectively, "the Village"). The two-count complaint alleges that Mr. Ericksen was improperly terminated in retaliation for filing a worker's compensation claim and that Mr. Brannam intentionally interfered with Mr. Ericksen's prospective economic advantage by recommending to the Board that he not be re-appointed. On February 28, 1994, Circuit Court Judge Jennifer Duncan–Brice dismissed Mr. Ericksen's complaint. On March 25, 1994, Mr. Ericksen moved to reconsider the dismissal. On October 5, 1994, the Court denied Mr. Ericksen's motion to reconsider.

---

1. Mr. Ericksen's complaint lists various times when Mr. Brannam allegedly made this statement. On several of those occasions Mr. Brannam is identified as holding the rank of sergeant. On other occasions Mr. Brannam's position is not identified. Accordingly, while Mr. Brannam is sued as the Chief of Police of the Willow Springs Police Department, it is not clear wheth-er he was chief of police at any time he made the statements in question. Mr. Ericksen also says a former police chief, John Lynn, made the same statements when he was police chief and he argues that a temporary police chief as well as other supervising officers, made similar statements at various times during Mr. Ericksen's tenure with the police department.

On May 12, 1994, Mr. Ericksen brought this action against the Village in federal district court under 42 U.S.C. § 1983, alleging that his termination without a hearing violated his right to due process. On August 11, 1994, the defendants moved to dismiss this action pursuant to FED.R.CIV.P. 12(b)(6) or, in the alternative, to stay all proceedings in this action pending the final resolution of the state action.

### Analysis

#### 1. Property Interest

 The Village first moves to dismiss the complaint on the ground that Mr. Ericksen has failed to allege a protectible property interest in his continued employment at the Department. Specific benefits such as continued public employment are, under appropriate circumstances, property interests protected by the Fourteenth Amendment. *Malcak v. Westchester Park District*, 754 F.2d 239, 242 (7th Cir.1985) (citing *Board of Regents v. Roth*, 408 U.S. 564, 576–79, 92 S.Ct. 2701, 2708–10, 33 L.Ed.2d 548 (1972)). A protectible property interest may arise from a statute, a rule of law, or through a "mutually explicit understanding" that includes a promise of continued employment. *Leis v. Flynt*, 439 U.S. 438, 442, 99 S.Ct. 698, 700–01, 58 L.Ed.2d 717 (1979) (citation omitted); *Colburn v. Trustees of Indiana University*, 973 F.2d 581, 589 (7th Cir.1992) (citation omitted). The existence of a substantive property interest in public employment is ordinarily a question of state law. *Fittshur v. Village of Menomonee Falls*, 31 F.3d 1401, 1405 (7th Cir.1994) (citation omitted); *Gorman v. Robinson*, 977 F.2d 350, 356 (7th Cir.1992) (citations omitted).

 The law is clear in Illinois that public employees have no presumptive property interest in their positions. *Domiano v. Village of River Grove*, 904 F.2d 1142, 1147 (7th Cir.1990) (citations omitted). In the absence of an understanding to the contrary, an employment agreement is presumed to be an "at-will" arrangement which can be terminated at any time and for any reason by either the employer or employee. *Corcoran v. Chicago Park District*, 875 F.2d 609, 612 (7th Cir.1989) (citations omitted).

#### A. *Assurances of Continued Employment*

 In the present case, Mr. Ericksen alleges that he received repeated assurances from various police personnel and a Trustee for the Village of Willow Springs that he would not be terminated as long as he performed his duties in a satisfactory manner. Complaint, ¶ 12. He argues that these assurances form the basis of a mutually explicit understanding of continued employment protected by the Due Process Clause of the Fourteenth Amendment. Indeed, it has been recognized that

> when a public employee legitimately relies on an employer's affirmative representation of continued employment, a mutually explicit understanding may be formed creating a protected property interest which cannot be deprived without procedural due process.

*Lynn v. Village of Willow Springs*, No. 87 C 5451, 1987 WL 18561, at *2–3 (N.D.Ill. Oct. 15, 1987) (citing *Lyman v. Strasbourg*, 647 F.Supp. 887, 890 (N.D.Ill.1986)).

The Village argues that *Lynn* does not reflect the current state of law in light of *Lee v. County of Cook*, 862 F.2d 139 (7th Cir. 1988), in which the Seventh Circuit upheld the dismissal of a Section 1983 action brought by a public employee who was terminated without a hearing after receiving assurances of continued employment from her supervisor. However, in *Lee*, the Court held that the assurances did not create a mutually explicit understanding because they were made by a first-line manager who clearly lacked the authority to bind the state. *Id.* at 142–43. The present case is distinguishable in that the assurances allegedly came from, among others, three police chiefs, individuals who may have had the requisite authority.

 Statements upon which are based a claim of a mutually explicit understanding must be made by a supervisor vested with proper authority. *Lee v. County of Cook, supra*, 862 F.2d at 143 (citing *Shlay v. Montgomery*, 802 F.2d 918, 921 (7th Cir.1986)). "Any other promises are 'unenforceable since it is well-established that a city is generally

not legally responsible for acts taken by its officers in excess of their authority.'" *Id.*[2] In *Hadley v. County of Du Page,* 715 F.2d 1238, 1242–43 (7th Cir.1983), *cert. denied,* 465 U.S. 1006, 104 S.Ct. 1000, 79 L.Ed.2d 232 (1984), the Seventh Circuit held that a public employee who received verbal assurances of job security from his superiors and county board members failed to establish a property interest in continued employment since "individual members of a county board in Illinois *do not* have the authority to bind a county to contracts." *Id.* (citations omitted) (emphasis in original). Rather, a property interest based on a mutually explicit understanding "would require an assurance from the County Board itself." *Id.*

In the present case, there is no allegation that the police personnel who made these statements were vested with the authority to do so. It is clear that under *Lee* and *Hadley* that statements by Mr. Brannam, when he was a sergeant in the police force and James Rizzi, just one Trustee of the Village, could not create such a vested interest. Mr. Ericksen's claim that Police Chief John Lynn, at various times in 1985 and 1986, made such a promise is more questionable in terms of possible authority.[3] Nevertheless, the complaint contains no allegation of such authority. Indeed, Mr. Ericksen implicitly acknowledges that the authority to hire and fire employees rests solely with the Village President and the Board of Trustees.[4] At least as plead in the complaint before me, Mr. Ericksen has not alleged a property interest sufficient to base a claimed violation of due process.

### B. *Pension Plan and Sick Leave Policy*

■ Mr. Ericksen also claims that the Department's pension plan and sick leave policy

created a property interest in his continued employment. All patrol officers were required to contribute to the Illinois Municipal Retirement Fund, from which they could not derive benefits until after completing numerous years of service. The sick leave policy provided that any patrol officer who did not exercise sick leave during a given year would be rewarded with two unscheduled leave days and five days of bonus pay during the following year. Mr. Ericksen concludes that the pension plan and sick leave policy constituted implied promises to the officers that they would only be terminated for cause. *See* Complaint, ¶¶ 13–14.

The Seventh Circuit soundly rejected this argument in *Shlay v. Montgomery, supra,* 802 F.2d at 923:

> [Plaintiff's] contention that he had *de facto* tenure because his salary and pension benefits had increased during his employment and because he had accrued vacation time is also meritless.... [T]he mere fact that the City increased compensation and benefits for its employees over the years does not give rise to a mutual understanding with respect to continued employment. We agree with the district court that simply because the City promised an employee increased remuneration if he was retained in his position cannot be translated into a promise that the employee would be retained.

*Id.* Accordingly, the Department's pension plan and sick leave policy did not create a protectible property interest in continued public employment.

### C. *Established Employment Policy*

■ Mr. Ericksen next argues that the Department's practice and policy of only ter-

---

2. *See also Fittshur v. Village of Menomonee Falls, supra,* 31 F.3d at 1408 ("An official's representations cannot form the basis of a 'mutually explicit understanding' unless that official has the authority to make the representations"); *Common v. Williams,* 859 F.2d 467, 471–72 (7th Cir.1988).

3. As indicated earlier, Mr. Brannam allegedly made such statements at other times also but his position at these times is not stated.

4. The complaint cites Section 2–2–2(C) of the Willow Springs Village Code, which provides:

C. Appointment; Removal: All police officers and civilian employees of the Police Department shall be hired and fired by the (Village) President with the approval of the Board of Trustees.

WILLOW SPRINGS, IL., CODE, tit. 2, § 2–2–2(C); Complaint, ¶ 7. *See also Corbitt v. President and Board of Trustees of Village of Willow Springs, Cook County,* 103 Ill.App.3d 818, 59 Ill.Dec. 470, 471–72, 431 N.E.2d 1227, 1228–29 (1981).

minating patrol officers for cause created a mutually explicit understanding of continued employment. Complaint, ¶ 15; Response, p. 3. An established custom or policy may be used as evidence that a mutually explicit understanding exists. *Davis v. City of Chicago,* 841 F.2d 186, 188 (7th Cir.1988). Although Mr. Ericksen fails to allege the source of this alleged practice, any indication of how long it existed, or any proof that other employees had relied upon it, he need not do so at this stage of the litigation. Mr. Ericksen has adequately alleged a mutually explicit understanding of continued employment based on an established policy to survive a Rule 12(b)(6) motion to dismiss. *See Davis v. City of Chicago, supra,* 841 F.2d at 189; *Quinn v. City of Chicago,* 646 F.Supp. 549, 551–52 (N.D.Ill.1986).

## 2. *Laches*

 The Village next argues that Mr. Ericksen's complaint is barred by the doctrine of laches because this lawsuit was not filed within the six-month laches period recognized in Illinois. This rule would create a special, generally shorter, statute of limitations in employment cases. However, the Seventh Circuit in *Herman v. City of Chicago,* 870 F.2d 400, 401 (7th Cir.1989), held that Illinois' special laches rule for employment cases was not applicable to Section 1983 cases because all Section 1983 cases are required to be treated alike for purposes of the statute of limitations. *Id.* at 403. *See Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) and *Owens v. Okure,* 488 U.S. 235, 109 S.Ct. 573, 102 L.Ed.2d 594 (1989). While this does not mean that laches is completely irrelevant, it is only delay intended to and with the result of having defendant's ability to defend undercut that will warrant dismissal. *Herman v. City of Chicago, supra,* 870 F.2d at 403.

In this case, the Village has not met its burden of demonstrating prejudice from the delay between the time Mr. Ericksen was terminated (May 14, 1992), and the time he brought suit (May 12, 1994). The Village argues that it has suffered prejudice by Mr. Ericksen's delay because individuals who may have information regarding his allega-

tions are no longer employed with the Village or are otherwise unavailable. However, the Village fails to identify those individuals who are now unavailable and the relevant information which these individuals possess.

The Village also argues that the addition of another year from the date of Mr. Ericksen's termination results in a larger amount of potential liability for back pay. *See* Motion, pp. 6–7. However, the Seventh Circuit has rejected the proposition that back pay exposure is sufficient to establish prejudice in a lawsuit, like this one, which was filed before the expiration of the two-year statute of limitations period but after the six-months laches period. *Herman v. City of Chicago, supra,* 870 F.2d at 403. Accordingly, the Village has not met its burden of demonstrating prejudice resulting from Mr. Ericksen's delay in bringing this lawsuit.

## 3. *Abstention*

 In the alternative, the Village moves to stay these proceedings pending final judgment in the state action pursuant to the abstention doctrine articulated in *Colorado River Water Conservation District v. United States,* 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). Under the *Colorado River* doctrine, a federal court may stay or dismiss a suit in exceptional circumstances when there is a concurrent state proceeding and the stay or dismissal would promote "wise judicial administration." *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.,* 962 F.2d 698, 700 (7th Cir.1992). The determination of whether exceptional circumstances exist in a given case is committed to the sound discretion of the district court. *United States ex rel. Hartigan v. Palumbo Bros., Inc.,* 797 F.Supp. 624, 633 (N.D.Ill. 1992) (citations omitted).

 The first step in determining whether to apply the *Colorado River* abstention doctrine is to inquire whether the concurrent state and federal proceedings are "parallel." *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc., supra,* 962 F.2d at 700. A suit is "parallel" when substantially the same parties are contemporaneously litigating substantially the same issues in another forum. *Id.* (citations omitted). In making this inquiry, a court should "look not

for formal symmetry between the two actions, but for a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Day v. Union Mines Inc.*, 862 F.2d 652, 656 (7th Cir.1988) (citation omitted).

In the present matter, the state and federal actions are parallel because the state litigation is likely to dispose of the federal action under the doctrine of *res judicata.* Under *res judicata,* or claim preclusion, a prior judgment on the merits bars the same parties or their privies from re-litigating all issues which were raised and decided or which could have been raised in the prior action. *Alexander v. Chicago Park District,* 773 F.2d 850, 853 (7th Cir.1985), *cert. denied,* 475 U.S. 1095, 106 S.Ct. 1492, 89 L.Ed.2d 894 (1986) (citations omitted). Ordinarily, a state court judgment commands the same *res judicata* effect in federal court that it would have had in the state court that entered it. *Lee v. City of Peoria,* 685 F.2d 196, 198 (7th Cir. 1982) (citations omitted). The essential elements of *res judicata* are (1) an identity of parties or privies in the two suits, (2) an identity of the cause of action in the two suits, and (3) a final judgment on the merits in the earlier action. *Prochotsky v. Baker & McKenzie,* 966 F.2d 333, 334 (7th Cir.1992) (citation omitted); *Smith v. City of Chicago,* 820 F.2d 916, 917 (7th Cir.1987) (citation omitted). Once a litigant satisfies the prongs of this test, a subsequent suit should be barred since there is little, if any, room left for making further policy arguments. *Smith v. City of Chicago, supra,* 820 F.2d at 917 (citation omitted).

The first prong of the test is easily satisfied here because the parties to the state and federal actions are the same.[5] The second prong is also satisfied because both lawsuits arose from a single core of operative facts, *i.e.* the removal of Mr. Ericksen from his employment at the Willow Springs Police Department. *See Alexander v. Chicago Park District, supra,* 773 F.2d at 854; *Prochotsky v. Baker & McKenzie, supra,* 966 F.2d at 335 ("Even though one group of facts

may give rise to different claims for relief upon different theories of recovery, there remains a single cause of action.... Once a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost") (citations omitted).

The preclusive effect of a final judgment from the state action depends on the outcome of the state action on appeal. The Village maintains, and Mr. Ericksen does not contest, that the state action was dismissed for failure to satisfy the statute of limitations applicable to the state claims. A dismissal for failure to comply with a statute of limitations is "on the merits" for purposes of *res judicata. American National Bank & Trust Co. v. City of Chicago,* 826 F.2d 1547, 1553 (7th Cir.), *cert. denied,* 484 U.S. 977, 108 S.Ct. 489, 98 L.Ed.2d 487 (1987); *Smith v. City of Chicago, supra,* 820 F.2d 916, 918–19 (7th Cir.1987) (citations omitted). Moreover, the availability of a longer statute of limitations for the federal claim does not affect the preclusive effect of an earlier state court judgment. *American National Bank & Trust Co. v. City of Chicago, supra,* 826 F.2d at 1551 ("If two lines of argument have different periods of limitation, someone who files within the shorter period and raises only the arguments governed by the shorter period may not file a second suit, governed by the longer period, after he loses the first—even if he loses the first solely on the ground that the filing was untimely") (citations omitted). Accordingly, if the dismissal of the state action is affirmed on appeal, the doctrine of *res judicata* will most likely bar the litigation of the Section 1983 claim in federal court. *See, e.g., Horton v. Caterpillar, Inc.,* 260 Ill.App.3d 150, 198 Ill.Dec. 450, 632 N.E.2d 1061 (3d Dist.), *appeal denied,* 157 Ill.2d 501, 205 Ill.Dec. 163, 642 N.E.2d 1280 (1994). Therefore, under the approach articulated in *Day v. Union Mines, supra,* 862 F.2d at 656, the federal and state actions are parallel for purposes of *Colorado River* abstention.

After determining that the state and federal proceedings are parallel, a court

---

**5.** Pending the disposition of this motion, Mr. Ericksen's attorney agreed in open court to dismiss Mr. Brannam as a defendant in this action.

Accordingly, the parties in the two lawsuits are identical with the exception of Mr. Brannam's absence from the federal action.

must balance the following factors: (1) whether the state has assumed jurisdiction over property; (2) the inconvenience of the federal forum; (3) the desirability of avoiding piecemeal litigation; (4) the order in which jurisdiction was obtained by the concurrent forums; (5) the source of governing law, state or federal; (6) the adequacy of state court action to protect the federal plaintiff's rights; (7) the relative progress of state and federal proceedings; (8) the presence or absence of concurrent jurisdiction; (9) the availability of removal; and (10) the vexatious or contrived nature of the federal claim. *Caminiti and Iatarola, Ltd. v. Behnke Warehousing, Inc.*, *supra*, 962 F.2d at 701 (citation omitted). No one factor is necessarily determinative; a court should carefully consider both the obligation to exercise jurisdiction and the combination of factors counselling against the exercise of jurisdiction. *Id.* (citation omitted).

In the present case, there are some factors that weigh against abstention. The state court has not assumed jurisdiction over property. The federal forum is not inconvenient to the Village. The source of governing law in this action will involve the interpretation of federal constitutional law as well as state law. Removal of the state action is not available. The federal claim does not appear to be vexatious or contrived.

However, several factors strongly weigh in favor of abstention. The state court obtained jurisdiction almost one year before this court. Consequently, the state proceeding has progressed further than this proceeding: while the federal action is still in its infancy, the state action is currently pending on appeal. The existence of concurrent jurisdiction over actions brought pursuant to Section 1983, *see Martinez v. California*, 444 U.S. 277 n. 7, 100 S.Ct. 553 n. 7, 62 L.Ed.2d 481 (1980); *Donnelly v. Yellow Freight System, Inc.*, 874 F.2d 402, 408 (7th Cir.1989),

*aff'd.*, 494 U.S. 820, 110 S.Ct. 1566, 108 L.Ed.2d 834 (1990), weighs strongly in favor of abstention. State court action would have been adequate to protect Mr. Ericksen's federal rights since "state courts, as much as federal courts, have a solemn obligation to follow federal law." *Lumen Construction, Inc. v. Brant Construction Co., Inc.*, 780 F.2d 691, 695 (7th Cir.1985) (citation omitted). Perhaps most important, the interest in avoiding piecemeal litigation strongly favors abstention since the state action may very well preclude the need for any further proceedings in this court.[6] Because these considerations substantially outweigh the factors counselling against abstention, the Court will stay these proceedings pending the resolution of the state action.

### *Conclusion*

For the foregoing reasons, the motion to dismiss the complaint for failure to state a claim is denied. The motion to stay this action pending the resolution of the state action is granted.

---

**6.** In a similar abstention case, the Seventh Circuit emphasized the importance of avoiding piecemeal litigation:

> In the present case, ... one can predict with some confidence that the state court litigation will probably eliminate the need for any further proceedings in federal court. Principles of res judicata can be expected to operate in full force, particularly in light of [plaintiff's] duplicate pleadings. In short, the similarity between the two cases is sufficient to justify the conclusion that the state court litigation will be an adequate vehicle for the complete and prompt resolution of the issue between the parties.

*Lumen Construction, Inc. v. Brant Construction Co., Inc.*, *supra*, 780 F.2d at 695 (citation omitted).